# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MY SWEET PETUNIA, INC., ) <br> ) <br> *Plaintiff*, ) <br> ) <br> ) <br> v. ) <br> ) <br> TONIC STUDIOS USA INC., ) <br> ) <br> *Defendant*. ) | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff My Sweet Petunia, Inc., by its attorneys, brings this Complaint against Defendant Tonic Studios USA Inc. and hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, specifically including 35 U.S.C. § 271.

## THE PARTIES

2. My Sweet Petunia, Inc. ("Plaintiff" or "Petunia") is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 310 Ridgeview Drive, Sherrard, Illinois 61281.

3. On information and belief, Tonic Studios USA Inc. ("Defendant" or "Tonic") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 800 Stockton Avenue, Ripon, California 95366.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Tonic because Tonic is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware. In addition, on information and belief, Tonic regularly and purposefully conducts business in Delaware, including but not limited to availing itself of the rights, protections, and benefits of Delaware law, and offering to sell and selling products to customers located in Delaware for use in Delaware. In addition, Tonic has offered to sell and/or has sold the accused infringing products to customers located in the United States, including those based in the state of Delaware.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1400(b).

## RELATED CASE

7. This is the second patent infringement lawsuit involving Petunia and Tonic pending in the District of Delaware. A prior patent infringement lawsuit numbered C.A. No. 17-364-GMS is currently pending before Judge Sleet ("the Prior Action").

8. In the Prior Action, Petunia alleges that Tonic's sale, offer for sale, and importation of its Tim Holtz Stamp Platform Model 1708E ("the 1708E") infringes U.S. Patent No. 9,597,909 ("the '909 Patent") owned by Petunia.

9. Petunia's patent at issue in the instant case, U.S. Patent No. 9,731,531 ("the '531 Patent"), is a continuation of the '909 Patent.

10. The product at issue in the instant case, Tonic's Tim Holtz Stamp Platform Model 1707E ("the 1707E" or "1707E stamp platform"), is a slightly modified version of the 1708E.

11. Petunia's stamping tool marketed by Petunia under the name "MOST INCREDIBLE STAMP TOOL INVENTED," or "MISTI", which competes directly with the 1707E and the 1708E, is the commercial embodiment of the '909 and '531 Patents.

**FACTUAL BACKGROUND**

12.     The '531 Patent, titled "Craftwork Tools and Kits," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 15, 2017. The '531 Patent is and remains valid and enforceable. Petunia is the owner by assignment of the entire right, title, and interest in and to the '531 Patent, including the sole and undivided right to sue for infringement. A true and correct copy of the '531 Patent is attached hereto as Exhibit 1.

13.     The '531 Patent is generally directed to a novel stamping tool for craftwork that includes a substantially rectangular base, a workspace, a widthwise raised side portion, a lengthwise raised side portion, and a substantially rectangular cover portion attached to the base by at least one hinge.

14.     The invention to which the '531 Patent is directed enables a user to accurately apply an ink stamp to a desired portion of a stampable substrate by placing the substrate on the workspace, placing the ink stamp on a face of the cover opposite the workspace, and moving the cover toward the workspace as one would turn a page of a book.

15.     The simplicity and precision of the patented invention has catapulted Petunia's MISTI stamping tool, the commercial embodiment of the invention recited in at least Claim 1 of the '531 Patent, to overwhelming success and has generated millions of dollars in sales for Petunia in the few short years since the product was invented.

16.     Petunia's MISTI stamping tool is currently sold around the world by over 330 retailers in the United States and over 240 retailers abroad.

17.     The MISTI stamping tool was even hailed as the "Best Hot Product" at the 2016 Craft and Hobby Association's MEGA Conference & Trade Show, the largest arts and crafts trade show in the world.

18. Petunia consistently marked its MISTI stamping tool as "Patent Pending" on both the product packaging and product itself from about January 22, 2015, to March 20, 2017, the day before the '909 Patent issued.

19. Since the issuance of the '909 Patent on March 21, 2017, Petunia has marked its MISTI stamping tool with the '909 Patent serial number in compliance with 35 U.S.C. § 287.

20. Since the issuance of the '531 Patent on August 15, 2017, Petunia has marked its MISTI stamping tool with the '531 Patent serial number in compliance with 35 U.S.C. § 287.

21. As alleged in the Prior Action, on information and belief, Tonic at least promoted, offered for sale and sold the 1708E device in January 2017.

22. On March 13, 2017, Petunia sent Tonic a cease and desist letter (the "First Cease and Desist Letter") informing Tonic of the imminent issuance of the '909 Patent on March 21, 2017, and Petunia's belief that the 1708E stamp platform fell within the scope of the allowed claims of the '909 Patent, which were included with the First Cease and Desist Letter.

23. Tonic received the First Cease and Desist Letter on March 14, 2017 and Tonic's counsel confirmed receipt of the letter by responding on March 17, 2017.

24. The granted claims the '909 Patent are identical to the allowed claims included with the First Cease and Desist Letter.

25. Notwithstanding Petunia's notice of the '909 Patent, Tonic refused to withdraw the 1708E from the market in the United States.

26. On April 3, 2017, Petunia filed the Prior Action in the District of Delaware, accusing Tonic of directly and indirectly infringing the '909 Patent.

27. On April 12, 2017, Tonic issued a letter to its wholesale customers stating Tonic would be launching a slightly modified version of the 1708E called the 1707E.

28.     Notwithstanding the Prior Action and the April 12, 2017 letter, Tonic continued to directly and indirectly infringe the '909 Patent at least by posting blog entries on its blog instructing users on how to use the accused device model 1708E in infringing ways.

29.     On information and belief, in July of 2017, Tonic began importing the 1707E into the United States and selling and offering to sell the 1707E in the United States.

30.     Images showing the 1707E stamp platform, including the product packaging ("Product Packaging") accompanying the product, are attached as Exhibit 2.

31.     The 1707E stamp platform includes only minor differences from the prior 1708E model, including placement of the rulers adjacent to the rigid raised side portions.

32.     Notwithstanding these minor differences, many of Tonic's retailers continue to display pictures of the 1708E on websites selling the 1707E.

33.     On August 15, 2017, the date of issuance of the '531 Patent, Petunia sent another cease and desist letter (the "Second Cease and Desist Letter") to counsel for Tonic informing Tonic of the '531 Patent, and Petunia's belief that the 1707E stamp platform falls within the scope of at least Claim 1 of the '531 Patent.

34.     The Second Cease and Desist Letter also enclosed a copy of the '531 Patent to provide actual notice to Tonic.

35.     In the Second Cease and Desist Letter, Petunia requested Tonic to immediately cease and desist from activities that induce and/or contribute to the infringement of the '531 Patent.

36.     Counsel for Tonic confirmed receipt of the Second Cease and Desist Letter by responding on August 17, 2017.

37. Upon information and belief, Tonic was aware of the issuance of the '531 Patent prior to August 15, 2017 at least because the '531 Patent is a continuation of the '909 Patent.

38. U.S. Patent Application No. 15/424,600, the patent application giving rise to the '531 Patent, was published as Pre-Grant Publication No. 2017/0144465 on May 25, 2017.

39. Petunia's counsel notified Tonic's counsel in a telephone call shortly after the First Cease and Desist Letter that Petunia had continuations of the '909 Patent pending.

40. Petunia's new 1707E is a direct competitor of Petunia's MISTI stamping tool and is offered at a substantially lower price.

41. Tonic's 1707E and 1708E are named the "Tim Holtz Stamp Platform" after Mr. Tim Holtz.

42. On information and belief, Mr. Holtz is an individual residing in Arizona who is well known in the crafting industry.

43. On information and belief, Mr. Holtz was aware of the MISTI stamping tool at least as early as November 2016 when he received a custom MISTI stamping tool manufactured specifically for him in the color brown by Petunia.

44. Mr. Holtz subsequently proclaimed his love of Petunia's MISTI stamping tool in a post on his personal blog,[1] a screen print of which is attached hereto as Exhibit 3 (the "Holtz Post"), stating "truth be told i never bought a misti simply because i wasn't a fan of the hot pink measuring guides. so a huge thank you to my friend jennifer mcguire and iliana myska (the inventor of the misti) for creating a custom 'brown' misti set just for me – i love them!"

---

[1] Previously available at: http://timholtz.com/12-tags-of-2016-november/ (last accessed May 17, 2017). Petunia notes that all references to Petunia's brown MITSI product made specifically for Mr. Holtz in the November 2016 Holtz Post have been removed from Mr. Holtz's personal blog since the blog was originally accessed.

45. Mr. Holtz also exuded the virtues of the MISTI stamping tool in the Holtz Post, exclaiming that "the misti is the very best tool to be able to stamp multiple times to get a crisp image – a serious must have!"

46. A true and correct copy of a photograph from the Holtz Post showing the custom brown MISTI stamping tool made by Petunia for Mr. Holtz is shown below. The words "U.S. Patent Pending" appear on the hinge of the product where indicated by the arrow below.



47. On information and belief, Mr. Holtz assisted Tonic with the design of the 1708E and 1707E model stamp platforms.

48. Approximately two months after publishing the Holtz Post, Mr. Holtz assisted Tonic with launching the 1708E by posting at least two videos to YouTube, including one dated

January 17, 2017 and titled "2017 Sneak Peek - Tonic Studios,"[2] and another dated January 21, 2017 and titled "Tim Holtz Stamping Platform - Creativation - CHA 2017."[3]

49. Since the filing of the Prior Action, the Tonic video dated January 17, 2017 and titled "2017 Sneak Peek - Tonic Studios," has been taken down.

50. Mr. Holtz licenses his name to Tonic for use in connection with the 1708E and 1707E.

51. Tim Holtz also promoted the 1708E at the 2017 MEGA Conference & Trade Show.

52. On information and belief, Tonic developed and released the 1708E and 1707E model stamp platforms to directly compete with Petunia's patented MISTI stamping tool.

53. As of the filing date of this Complaint, at least twenty-seven (27) merchants offer the 1707E for sale to customers in the United States on Amazon.com.

54. In addition, major online sellers, such as Simon Says Stamp, which are also retailers of Petunia's MISTI stamping tool, offer the infringing 1707E stamp platform for sale to customers in the United States.[4] *See* Exhibit 4.

55. In addition, nationwide distributor Notions Marketing Corporation of Grand Rapids, Michigan offers the 1707E for sale to US retailers.

56. Tonic also promotes the 1707E at least on its website, where the 1707E appears prominently located as the very first item pictured.[5] *See* Exhibit 5.

---

[2] Previously available at: https://www.youtube.com/watch?v=bdM_JiV6NF4 (last accessed May 17, 2017).

[3] Previously available at: https://www.youtube.com/watch?v=WykeFdGl4W0&t=310s (last accessed May 17, 2017).

[4] Available at: https://www.simonsaysstamp.com/product/Tim-Holtz-Tonic-Craft-STAMP-PLATFORM-1708E-1708E (last accessed August 22, 2017).

57. Tonic provides a video, photographs and text that instruct users on how to use the 1707E in a manner that infringes numerous claims of the '531 Patent.[6] *See* Exhibit 6.

58. Upon information and belief, the 1707E is imported by Tonic from China because the Product Packaging accompanying the 1707E states the product is Made in China.

59. Tonic's 1707E stamp platform device satisfies each and every limitation of at least Claim 1 of the '531 Patent, either literally or under the doctrine of equivalents.

### COUNT I: DIRECT INFRINGEMENT OF THE '531 PATENT

60. Petunia realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

61. Tonic has directly infringed and continues to directly infringe at least Claims 1-3 and 5 of the '531 Patent in violation of 35 U.S.C. § 271(a) by at least offering to sell, selling, and importing into the United States without authority, apparatuses for craftwork that include all of the limitations of at least Claims 1-3 and 5 of the '531 Patent, including, but not limited to the 1707E stamp platform.

62. As shown in Exhibit 2 and in the preliminary claim chart attached hereto as Exhibit 7, the 1707E stamp platform includes all the features of at least Claims 1-3 and 5 of the '531 Patent.

### COUNT II: INDUCED INFRINGEMENT OF THE '531 PATENT

63. Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

---

[5] Available at: https://www.tonic-studios.com (last accessed August 22, 2017).

[6] Available at: https://www.tonic-studios.com/pages/timholtzstampplatform (last accessed August 22, 2017).

64. By encouraging and instructing others to use the 1707E stamp platform in a manner that Tonic knew or should have known infringes at least at least Claims 6-16 and 18-19 of the '531 Patent, with the specific intent to bring about such acts of infringement, Tonic has induced infringement of the '531 Patent in violation of 35 U.S.C. § 271(b).

65. Use of the 1707E stamp platform in accordance with the photographs, video and the instructions on the Tonic Website directly infringes at least Claims 6-16 and 18-19 of the '531 Patent, as shown in Exhibit 6.[7]

66. The Product Packaging includes the instruction "[f]or product tips & ideas visit www.timholtz.com."

67. Use of the 1707E stamp platform in accordance with the instructional content as directed by the Product Packaging directly infringes at least Claims 6-16 and 18-19 of the '531 Patent.

68. Moreover, use of the 1707E stamp platform by third parties as demonstrated in Tonic's YouTube video on the "Tim Holtz Stamping Platform" directly infringes at least Claims 6-16 and 18-19 of the '531 Patent.[8]

69. Since at least as early as Tonic's receipt of the Second Cease and Desist Letter, Tonic has had actual knowledge of the '531 Patent and knowledge that the 1707E stamp platform, and use thereof in accordance with Tonic's instructions, infringes at least Claims 6-16 and 18-19 of the '531 Patent.

70. Notwithstanding Tonic's receipt of the Second Cease and Desist Letter and knowledge of the issuance of the '531 Patent, Tonic continues to promote the 1707E stamp

---

[7] Available at: https://www.tonic-studios.com/pages/timholtzstampplatform (last accessed August 22, 2017).

[8] Available at: https://www.youtube.com/watch?v=TNZu589pOqM (last accessed August 22, 2017).

platform on its website and instructs users on how to use the 1707E in a way that infringes at least Claims 6-16 and 18-19 of the '531 Patent.

71. Tonic's general manager Gary Torres recently responded to a customer's question of "[w]hat are the differences between this 1707e and the previous 1708e platforms?" by answering "[t]he only visible difference is where the rulers meet in the corner and the corner edges do not meet." See Exhibit 8.

72. Tonic has engaged in these activities with the specific intent to cause acts which it knows or should know would constitute direct infringement of at least Claims 6-16 and 18-19 of the '531 Patent by such third parties, including users of the 1707E stamp platform.

73. Accordingly, Tonic has and/or continues to actively induce infringement of the '531 Patent by at least encouraging and instructing persons located in the United States to use the 1707E stamp platform in a manner that infringes at least Claims 6-16 and 18-19 of the '531 Patent under 35 U.S.C. § 271(b).

74. Tonic's past and/or ongoing inducement with specific intent to bring about such infringement and knowledge that infringement of at least Claims 6-16 and 18-19 of the '531 Patent will take place subjects Tonic to liability as an indirect infringer for induced infringement.

**COUNT III: CONTRIBUTORY INFRINGEMENT OF THE '531 PATENT**

75. Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein

76. The 1707E stamp platform offered for sale, sold and/or imported by Tonic constitutes a material part of the invention recited in at least Claims 6-16 and 18-19 of the '531 Patent.

77. The 1707E stamp platform offered for sale, sold and/or imported by Tonic is not a staple article or commodity of commerce suitable for substantial non-infringing use.

78. The 1707E stamp platform has no substantial non-infringing uses.

79. Moreover, at least as a result of having been placed on notice of the '531 Patent by Petunia's Second Cease and Desist Letter, Tonic knows that the 1707E stamp platform is especially made or especially adapted for use in a manner that infringes at least Claims 6-16 and 18-19 of the '531 Patent as shown in <u>Exhibits 2 and 4-7</u>.

80. Accordingly, Tonic's activities of manufacturing, using, selling, offering to sell, importing and instructing users on how to use the 1707E stamp platform contribute to direct infringement of at least Claims 6-16 and 18-19 of the '531 Patent by third parties in violation of 35 U.S.C. § 271(c).

## **WILLFUL PATENT INFRINGEMENT**

81. Defendant's infringement of the '531 Patent as set forth in Counts I - III has directly caused substantial monetary harm to Petunia in an amount to be proven at trial, including lost profits.

82. Defendant's infringement of the '531 Patent as set forth in Counts I - III has caused Petunia damages for which Petunia has no adequate remedy at law, including but not limited to price erosion relating to Petunia's sales of its MISTI stamping tool product, and will continue to damage Petunia unless enjoined by this Court.

83. On information and belief, Defendant's infringement of the '531 Patent has been willful, deliberate, and with full knowledge that the sale, offer for sale, use and importation into the United States of the 1707E stamp platform infringes at least Claims 1-3, 5-16 and 18-19 of

the '531 Patent, justifying the award to Petunia of damages three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

84. Defendant's willful infringement of the '531 Patent renders this an exceptional case, justifying an award to Petunia of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Petunia respectfully prays for judgment in its favor granting the following relief:

(a) A finding that Defendant has directly infringed, induced others to infringe, and/or contributorily infringed one or more claims of the '531 Patent;

(b) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Petunia for Defendant's infringement of one or more claims of the '531 Patent, including both pre-judgment and post-judgment interest and costs as fixed by the Court;

(c) A finding that Defendant's infringement of one or more claims of the '531 Patent has been willful;

(d) An increase in the damages to be awarded to Petunia of three times the amount found by the jury or assessed by the Court;

(e) A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Petunia's reasonable attorney fees incurred in connection with the litigation;

(f) An order permanently enjoining Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons acting in privity or concert with them, from committing further acts of infringement of the '531 Patent, including making, using,

offering to sell, or selling in the United States, or importing into the United States Defendant's 1707E stamp platform; and

    (g)    Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and District of Delaware Local Rule 38.1, Petunia hereby demands a trial by jury on all issues so triable.

Dated: August 22, 2017

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

/s/ Eric B. Fugett
Eric B. Fugett (#5609)
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Tel: (615) 244-6380
eric.fugett@wallerlaw.com

OF COUNSEL:

Shane V. Cortesi
The Law Office of Shane V. Cortesi
3200 West End Avenue, Suite 3200
Nashville TN 37203
615-522-5318
shane.cortesi@cortesilaw.com

***Attorneys for Plaintiff My Sweet Petunia, Inc.***